JADAIR, INC., Plaintiff,

v.

The WALT KEELER COMPANY,
INC., Defendant.

No. 79-C-971.

United States District Court,
E. D. Wisconsin.

Feb. 23, 1981.

Bruce R. Bauer, Quarles & Brady, Milwaukee, Wis., for plaintiff.

Robert A. Christensen, Foley & Lardner, Milwaukee, Wis., for defendant.

## MEMORANDUM AND ORDER

ROBERT L. WARREN, District Judge.

The plaintiff in this action is Jadair, Inc., a Wisconsin corporation which manufactures Redi-Wash equipment at its plant in Port Washington, Wisconsin. A Redi-Wash machine is a device used to clean out cement trucks after they have hauled a load of cement. The defendant, The Walt Keeler Co., is a Kansas corporation which pur-

chased a Redi-Wash machine from plaintiff. The plaintiff brought this action seeking a declaratory judgment that it is not indebted to the defendant for any damage due to difficulties defendant experienced with plaintiff's machine. The defendant has filed a motion to dismiss for lack of personal jurisdiction. After substantial discovery on the issue, the plaintiff responded and the issue is now ripe for resolution.

The following facts are undisputed. On October 25, 1978, plaintiff's sales manager, William Sarring, met with defendant's president, Earl Callison, at defendant's facility in Wichita, Kansas to discuss the selling of a Redi-Wash machine to defendant. During this meeting, Mr. Sarring informed Mr. Callison that if Walt Keeler purchased a Redi-Wash machine, it would be produced at the Jadair facility in Port Washington, Wisconsin and that was the only place where the machine could be built.

On November 1, 1978, the parties entered into a contract for the purchase and sale of a Redi-Wash machine. The contract was signed at defendant's facilities in Wichita, Kansas. It provided for the purchase of one Redi-Wash machine F.O.B. seller's plant, Port Washington, Wisconsin.

Defendant's officers and employees never came to Wisconsin in connection with this purchase. Furthermore, defendant has no offices, bank accounts or listing in Wisconsin and transacts no business in the state.

■■■ Wisconsin Statutes section 801.-05(5)(d) provides that the courts of the state have jurisdiction over a person in any action which:

> (d) Relates to goods, documents of title, or other things of value shipped from this state by the plaintiff to the defendant on his order or direction.

This provision of the Wisconsin long-arm statute is, however, subject to the caveat that the legislature intended that the statute would "reach only so far as permitted by the due process clause of the Fourteenth Amendment to the United States Constitution and no further." *Lakeside Bridge & Steel v. Mountain State Construction Co.,*

597 F.2d 596, 599 (7th Cir. 1979) *citing Flambeau Plastics Corp. v. King Bee Mfg. Co.,* 24 Wis.2d 459, 129 N.W.2d 237 (1964). Therefore, in interpreting the statute, the Court must determine whether the defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). This standard must be applied on a case-by-case basis. *Id.*

Recently, the seventh circuit has demonstrated how enigmatic the concept of personal jurisdiction is given the various factors the courts must consider. In *Lakeside Bridge & Steel v. Mountain State Construction,* the court held that a foreign corporation was not subject to jurisdiction in Wisconsin when the sole basis for the assertion of jurisdiction was the unilateral activity of the resident plaintiff. 597 F.2d at 603. In reaching its decision, the court applied the factors set out in *The Restatement (Second) of Conflict of Laws,* § 37 comment a. Comment a states that when an out-of-state

> act may not have been done with the intention of causing effects in the state but could reasonably have been expected to do so [the state's power to exercise judicial jurisdiction] depends upon a variety of factors, including the extent of the relationship of the state to the defendant and to the plaintiff, the nature and quality of the effects resulting from the act, and the degree of inconvenience which would result to the defendant from being forced to stand suit in the state on the particular cause of action.

Because the defendant in *Lakeside* had no other contacts with Wisconsin and because the activity it caused in Wisconsin—the production of goods—was not highly dangerous, the court held that it lacked significant contact with Wisconsin to subject it to jurisdiction in the state. The court, however, expressly declined to decide if the result would be different had the contract specifically required production in Wisconsin or if the nature of the plaintiff's contractual obligations made performance in the forum state necessary. *Id.* at 603 n.13. The sev-

enth circuit in ruling as it did in *Lakeside Bridge & Steel* aligned itself with a number of other circuits that have held that performance of a contract in the forum state by plaintiff is not enough by itself to establish jurisdiction over a non-resident defendant without any other contacts with the forum state. *Id.* at 601 and cases cited therein.

Many read the seventh circuit's decision in *Lakeside* as a retrenchment by the court on the issue of personal jurisdiction. Yet, a few months after *Lakeside*, the court distinguished its *Lakeside* opinion in holding that personal jurisdiction did exist over a non-resident defendant whose officers had made two trips to Wisconsin for purposes related to the contracts. *Wisconsin Electric Manufacturing Co. v. Pennant Products*, 619 F.2d 676 (7th Cir. 1980). The court found that the two visits to Wisconsin by officials of Pennant Products were significant to the formation and performance of the contract and thus defendant had conducted activities in the forum state sufficient to satisfy due process. *Id.* at 678. Absent these two contacts, the defendant lacked any connection with the state.

The decision in *Pennant Products* appeared to cast doubt on the reasoning of the *Lakeside* court because the seventh circuit failed to explain why face-to-face negotiations in Wisconsin differed from negotiations by mail or phone with regard to the issue of jurisdiction. This is especially true given the court's expressed disavowal that it was deciding the issue based on the defendant's presence in the state. 619 F.2d at 678 n.8.

The seventh circuit further muddled the issue in its most recent opinion in *Koster v. Automark Industries, Inc.*, 640 F.2d 77 (7th Cir. 1981). There the court cited with approval and expressly relied on its opinion in *Lakeside* to hold that a corporation which had done business with a citizen of the Netherlands, but not in the Netherlands, was not amenable to jurisdiction in the Netherlands. In further explaining the *Lakeside* opinion, the court noted that it assumed that the defendant in *Lakeside* believed the contract would be performed in Wisconsin. At 79. This, however, was not enough for a successful assertion of jurisdiction under the circumstances.

In light of the *Koster* case, the Court finds that the reasoning in *Lakeside* has continuing viability. Furthermore, the Court finds that under the reasoning of *Lakeside*, defendant does not have sufficient contacts with the state of Wisconsin to subject it to the jurisdiction of the state without violating due process. As stated earlier, defendant had no other contacts with Wisconsin, its officials never came into the state, and the contract did not require that the plaintiff perform a particularly dangerous activity in the state. Furthermore, contrary to plaintiff's suggestion, that the defendant knew the contract would be performed in Wisconsin is not a significant factor. *Koster v. Automark Industries, Inc.*, at 79. The contract itself did not require performance in Wisconsin, nor did the nature of plaintiff's performance make performance in the state a necessity. That the only plant that could produce the product was located in Wisconsin did not make performance necessary in Wisconsin. It did, however, make it inevitable.

Finally, the Court concurs with the practical reasoning of the first circuit in *Whittaker Corporation v. United Aircraft Corporation*, 482 F.2d 1079, 1085 (1st Cir. 1973) that the "interest of the forum [state] in not discouraging foreign purchasers from dealing with resident sellers for fear of having to engage in litigation in distant courts undercuts an expansive interpretation" of Wisconsin's long-arm statute.

On the basis of the foregoing, the Court finds that the defendant's motion to dismiss for lack of personal jurisdiction must be and is hereby granted.

So ordered.